UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SERENA ADCOCK | CIVIL ACTION NO. 08-0962 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SUNQUEST PROPERTIES, INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Record Document 11] filed by defendant, Sunquest Properties, Inc. ("Sunquest"). Sunquest moves for summary judgment, arguing that plaintiff's claims for gender and pregnancy discrimination are without merit as a matter of fact and law. Plaintiff, Serena Adcock ("Adcock"), opposed the Motion for Summary Judgment. [Record Document 19]. For the reasons which follow, Defendant's Motion for Summary Judgment is **GRANTED** .

I. **FACTUAL BACKGROUND**

Sunquest Properties owns and operates numerous apartment complexes in Shreveport, Louisiana. On July 11, 2005, Plaintiff Adcock was hired to serve as the manager for Southern Oaks, one of the properties managed by Sunquest. Approximately two years later, a management position became available at Ashton Pines, a larger complex owned by Sunquest. Kathryn Burkett ("Burkett"), Adcock's supervisor, recognized that Adcock had been with the company for almost two years and recommended her for the position. [Burkett Dep., p.39-41]. Prior to accepting the position, Adcock informed Burkett that she was pregnant. Accordingly to Plaintiff, Burkett became concerned about the presence of mold at one of the apartments at Ashton Pines and questioned whether

Plaintiff could be exposed to the mold. [Adcock Dep., p.143-147]. Plaintiff also claims Burkett questioned her physical ability to walk the stairs at Ashton Pines. Id. Despite these alleged concerns, on June 25, 2007, Adcock was promoted to the Ashton Pines Apartment property manager and received a $6,000 annual salary increase as a result. [Doc. 1, ¶ 5].

At the time Adcock transferred to Ashton Pines, Jessica Howard was working as the assistant manager at the property. [Adcock Dep., p.108]. Within a short time, Adcock terminated Ms. Howard's assignment and replaced her with a personal acquaintance, Mandy Lindsey. Id. at 110-111. Mandy Lindsey had no employment history as an apartment manager and was a stay-at-home mom at the time she was hired by Plaintiff. Id. at 112.

Thereafter, Sunquest began receiving complaints from tenants at Ashton Pines regarding Adcock. Tenants complained that the office door would be locked during office hours, that they could see Adcock and her assistant sitting inside but they would not open the door, and that the phones were forwarded to the answering service during office hours. [Burkett Dep., p.24-25]. Linda Crouch, the manager of TreeTops Apartments located near Ashton Pines, also received complaints from tenants about the phone being forwarded to the answering service and that they were unable to reach Adcock. [Crouch Dep., p.17]. On two occasions, Burkett told Crouch to go over to Ashton Pines and check it out. Each time, Crouch found the front door locked and had to enter through the back maintenance door. She found Adcock and her assistant sitting in the back office, but never received an explanation as to why the front door was locked. [Burkett Dep., p 25; Crouch Dep., 51-52].

The maintenance personnel, Fred Datcher and Nick Martin, complained that Adcock would not provide them written work orders and that she was not updating the vacancy board. [Burkett Dep., p.26-27]. Nick Martin also complained that Adcock wrongfully accused him of taking the apartment credit card and that she screamed at him in the main office using vulgar and abusive language.[1] Id. at 23. In addition, the maintenance personnel complained that Adcock instructed them to remove furniture and personal items from an apartment before the tenants were legally evicted from their apartment. [Burkett Dep., p. 32; Crouch Dep., p.19-23].

After learning of these complaints, Burkett met with Lisa Phillips, Sunquest's comptroller at the time. Burkett advised Ms. Phillips of the numerous complaints they had received concerning Adcock, and together they made the decision to terminate Plaintiff's employment. [Burkett Dep., p.15-16, 18-19, 22]. On August 16, 2007, Burkett advised both Adcock and Mandy Lindsey that they were no longer needed and were discharged from Sunquest's employment effective immediately. Id. at 71. Later, Adcock received a separation notice from the company stating she was fired "due to unsatisfactory job performance." [Doc. 1, ¶ 9].

Plaintiff filed a complaint with the Louisiana Commission on Human Rights ("LCHR") and the Equal Employment Opportunity Commission ("EEOC"). The LCHR issued a right-to-sue letter on May 12, 2008. [Doc. 1, ¶ 2]. Adcock filed the instant lawsuit on July 8, 2008, alleging gender and pregnancy discrimination under both federal and state law. See

---

[1] Adcock later discovered the credit card in a desk drawer and called Burkett to explain what happened, admitting it was her fault. She also called Nick Martin and apologized for her behavior.

id. Sunquest answered on September 30, 2008, arguing, *inter alia*, that it "was justified and had a reasonable business purpose for terminating the employment of Serena Adcock." [Doc. 3, ¶ 4]. Thereafter, Sunquest filed a Motion for Summary Judgment seeking dismissal of all of Adcock's claims. [Docs. 11, 12]. Adcock opposes the Motion for Summary Judgment. [Doc. 19].

II.   **LAW AND ANALYSIS**

   A.   **Summary Judgment Standard.**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The party moving for summary judgment bears the burden of informing the court "of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. Celotex Corp., 477 U.S. at 325; Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). The nonmovant "must go beyond the pleadings and designate specific facts in the record showing that

there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The court must review those facts "drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986). Summary judgment may be granted only if the Court is "satisfied that no reasonable trier of fact could find for the nonmoving party." Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990).

B.  **Pregnancy and Gender Discrimination.**[2]

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The first clause of the Pregnancy Discrimination Act ("PDA") amended Title VII such that the terms "because of sex" or "on the basis of sex" included, but was not limited to, "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The second clause of the PDA further provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." Id.

A PDA claim is analyzed like any other Title VII discrimination claim, which can be established through either direct or circumstantial evidence. See Laxton v. Gap Inc., 333

---

[2]"Louisiana's anti-discrimination law is substantively similar to the federal statute"; thus, the analysis of both the state and federal law claims of discrimination are the same. Brittain v. Family Care Services, Inc., 34,787-CA (La.App. 2 Cir. June 20, 1001), 801 So.2d 457, 461. Further, Adcock makes no argument for gender discrimination separate from pregnancy discrimination.

F.3d 572, 577 (5th Cir. 2003). Sunquest argues that Adcock has, at most, weak circumstantial evidence and hence wishes to analyze Adcock's claims under the familiar McDonnell Douglas framework. Under this framework, the plaintiff must first create a presumption of discrimination by making out a *prima facie* case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). This requires the plaintiff to show: (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated." Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998). "The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination," which "causes the presumption of discrimination to dissipate." McDonnell Douglas, 411 U.S. at 802. "The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." Id.

In cases such as this one where the adverse employment decision may have resulted from "mixed-motives," the Fifth Circuit Court of Appeals has adopted a "modified McDonnell Douglas analysis." In those cases, after the plaintiff has established his *prima facie* case and the defendant has responded with a legitimate, nondiscriminatory reason for the adverse employment action:

> The plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

> The question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his *prima facie* showing under the modified McDonnell Douglas standard and the defendant has responded with a legitimate, nondiscriminatory reason. If the plaintiff demonstrates the protected characteristic was a motivating factor in the employment decision (meets the mixed-motive showing), which . . . may be achieved through circumstantial evidence, it then falls to the defendant to prove that the same adverse employment action would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.

Keelan v. Majesco Software, Inc., 407 F.3d 322, 341 (5th Cir. 2005) (internal quotations and citations omitted).

### (a) *Prima Facie* Case

There is no dispute that Adcock has established the first and third elements of her *prima facie* case, as she was pregnant and was terminated. But Sunquest argues that its motion should be granted because Adcock has failed to show that she was qualified for the position or that there were similarly situated employees who were treated more favorably. [See Doc. 12]. The Court agrees. "Under the PDA, an employer is obliged to ignore a woman's pregnancy and to treat the employee as well as it would have if she were not pregnant." Urbano, 138 F.3d at 206. Under this rationale, Sunquest was entitled to terminate Adcock for failing to perform her job duties at a satisfactory level as long as it treated "similarly affected but nonpregnant employees" the same. See id. Without a showing that Sunquest terminated employees for substandard job performance only in cases involving its pregnant workers, Adcock cannot maintain that she was a victim of discrimination under the PDA. See id.

Burkett testified that all employees were placed on a 90-day probation upon transferring to a new property or taking a new position, and that any employee who

performs at a substandard level is terminated. [Burkett Dep., p. 20, 76]. Mandy Lindsey, who was not pregnant at the time of her employment with Sunquest, was fired at the exact same time and for the exact same substandard job performance as Adcock. Furthermore, there is evidence that at least two other Sunquest employees were pregnant while Adcock was employed or became pregnant shortly thereafter and did not suffer any adverse employment actions. Adcock points to Burkett's alleged complaints regarding Tamika Anderson, a manager at the Southern Village and Southern Oaks apartments, and the length of time she was out on maternity leave to show Burkett harbored a "discriminatory animus." [Doc. 1, ¶ 8]. However, Anderson was able to resume her position at Sunquest upon returning from maternity leave and did not suffer any adverse consequences "because of" or "on the basis of" her pregnancy. [Adcock Dep., p.97-98]. Brandi Davis became pregnant after Adcock was terminated, but Adcock admits she is not aware of any adverse employment actions that had been taken after Sunquest learned of Davis's pregnancy. In fact, Adcock testified that Davis continues to be employed with Sunquest. Id. at 98-99.

The record is devoid of any evidence that Adcock was treated differently than any other employee who failed to perform his or her job duties as required. Accordingly, summary judgment is appropriate because Adcock has simply failed to come forward with any credible evidence to create an issue of fact with respect to the fourth element of her prima facie case.[3]

---

[3] The Court also finds that Adcock is unable to establish the second element of her prima facie case because she was not "qualified" for the position for which she lost. The evidence offered by Sunquest to show she was not qualified is discussed below in connection with Sunquest's legitimate, nondiscriminatory reason for Adcock's termination.

### (b) Legitimate, Nondiscriminatory Reason

Even if the Court were to assume that Plaintiff could establish a *prima facie* case of discrimination, Sunquest has produced a legitimate, nondiscriminatory reason for terminating Adcock. As discussed above, Sunquest received numerous complaints from tenants who reported that Adcock would have the phone calls forward to the answering service during office hours and that the office doors would be locked during office hours while Adcock was clearly visible inside the office. [Burkett Dep., p.24-25]. There were also complaints that Adcock took a two-hour lunch during which time the office was locked. Id. at 33. Burkett testified that she received a call from Fred Datcher, the maintenance supervisor, informing her that Adcock "talked down to them, that she would not communicate with them," and that she would just tell them to do something without giving them a work order. Id. at 26. This concerned Burkett because Sunquest policy mandated that work orders be done on the computer—the maintenance personnel were required to present a copy of the work order in order to be paid. Id. at 27. Fred Datcher also reported to Burkett that Adcock was not updating the vacancy board. As a result, the maintenance personnel were not aware of which apartments were vacant and needed to be prepared for a new tenant. Instead, Adcock would suddenly tell them to work on an apartment because she had someone moving in the next day. Id. at 26-27. Additionally, Plaintiff admitted to wrongfully accusing Nick Martin of stealing the company credit card and ordering the maintenance personnel to clean out an apartment before a judgment of eviction was obtained. [Adcock Dep., p. 154-55, 157-60]. This evidence is more than sufficient to demonstrate Sunquest had legitimate, nondiscriminatory reasons for her termination, any one of which would have been sufficient. Thus, any presumption of

discrimination that would exist if Plaintiff was able to establish a *prima facie* dissipates and she bears the burden to show a genuine issue of material fact exists as to whether (1) Sunquest's proffered reason is pretext for discrimination, or (2) Sunquest's preferred reason, while true, is only one of the reasons for its conduct, and another motivating factor was the plaintiff's pregnancy. See Keelan, 407 F.3d at 341.

### (c) Pretext / Mixed-Motive

Plaintiff relies solely on two comments made by Burkett to support her allegations of gender and pregnancy discrimination. On March 2, 2009, Adcock was deposed and testified as follows:

> Q. All right. What leads you to conclude that your termination was based on your pregnancy?
>
> A. The questions and comments that were made. Her assuming that I couldn't do my job because I was pregnant and her — or not having the ability to do my job because I was pregnant, and her comments that were made.
>
> Q. All right. Now I know we hadn't been here all day and gone through every comment, but my understanding was that the comment dealing with your pregnancy was made while you were still at Southern Oaks and she questioned whether you needed to be around mold.
>
> * * *
>
> Q. And she questioned whether you need to be around mold, and she got some information from your doctor saying it was okay, and so she okayed the promotion. Do you agree with that?
>
> A. Yes, sir.
>
> Q. So was that comment about mold, is that one of those comments that you are looking to make the assumption that your termination was pregnancy-driven?
>
> A. That and another one.

Q. Okay. So that's the one. All right. What's the other one?

A. Her questioning me about my ability to, or physically — physical ability to walk the stairs while I was pregnant.

Q. When did that take place?

A. After I was at Ashton Pines.

* * *

A. She asked me if I realized that there were more stairs at Ashton Pines than there were at Southern Oaks, and I said yes to the fact. And she said, well, are you going to be able to handle that. And I said, yes, ma'am, I do believe I can.

* * *

Q. And she made one comment, you answered, and did she go on with that, that discussion?

A. No, sir, she didn't.

Q. Okay. Then what? Was there another time she questioned your ability to walk the stairs?

A. No, sir.

Q. Okay. So we've got two comments. The first made prior to your coming over, and then the second one being made about halfway — well, in July, you said.

A. Yes, sir.

Q. And those are the two comments that you are relying upon.

A. Yes, sir.

[Adcock Dep., p.143-147].

Under Fifth Circuit law, in order for comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the complained-of adverse

employment decision, (3) made by an individual with authority, and (4) related to the employment decision at issue. Jenkins v. Methodist Hosp. of Dallas, Inc., 479 F.3d 255, 261 (5th Cir. 2007); Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002). Specific comments made over a lengthy period of time are sufficient. But "[w]here comments are vague and remote in time, they are insufficient to establish discrimination." Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001) (internal quotations and parenthesis omitted) (citing Brown v. CSC Logic, Inc. 82 F.3d 651, 655-56 (5th Cir. 1996)).

Under this test, neither comment at issue is sufficient evidence of discrimination. In regards to the first comment concerning mold, Burkett testified that her comment was not directed to Adcock because she was pregnant, but at all employees other than the maintenance personnel who knew what precautions needed to be taken and how to properly clean up the mold. [Burkett Dep., p.60 ("I didn't know how mold affected anybody. I think I told her to ask her doctor. What I was referring to, I didn't want her going into the unit. Let the maintenance men do it.")]. Nor was the comment "proximate in time" to her termination, as it was made *before* she received the promotion to Ashton Pines. Further, the comment was not "related to" the decision to terminate her employment—Burkett *promoted* Plaintiff subsequent to their discussion regarding the mold. With respect to the second comment concerning the stairs, there is no evidence that this comment was directed at Plaintiff because of her pregnancy or related in anyway to her termination. To the contrary, Adcock admitted Ashton Pines was a larger property than Southern Oaks and that there were more stairs at Ashton Pines. [Adcock Dep., p.145]. Adcock's mere subjective belief is simply insufficient to demonstrate pretext or to create a genuine issue

of material fact as to whether her pregnancy was a motivating factor in her termination. See e.g., Phillips v. Credit Lyonnais, 2002 WL 1575412 (N.D. Tex. 2002) (supervisor's alleged comment close to time of pregnant employee's termination was insufficient to show that employer's proffered reason for termination—substandard work performance—was pretextual, especially considering overwhelming evidence of poor performance).

## III. CONCLUSION

Accordingly, the Court finds that Adcock has failed to create a presumption of discrimination by making out a *prima facie* case of discrimination. Specifically, she has failed to establish that others similarly situated were more favorably treated. Moreover, even if the Court were to assume that Adcock could establish a *prima facie* case of discrimination, she has failed to offer sufficient evidence to show a genuine issue of material exists as to whether Sunquest's legitimate, nondiscriminatory reason was pretext or whether her pregnancy was a motivating factor in her termination.[4]

Therefore, the Motion for Summary Judgment [Record Document 11] filed by Sunquest is **GRANTED** and all of Adcock's claims are **DISMISSED WITH PREJUDICE**. A judgment consistent with the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 4th day of September, 2009.

*[signature]*
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[4] On August 27, 2009, Plaintiff Adcock filed a Motion in Limine [Record Document 23] seeking to exclude and/or limit certain evidence or argument which she anticipates will be offered by Sunquest at trial. In light of the instant Memorandum Ruling, the Motion in Limine [Record Document 23] is **MOOT**.