UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SERENA ADCOCK                      CIVIL ACTION NO. 08-cv-0962

VERSUS                             JUDGE HICKS

SUNQUEST PROPERTIES, INC.        MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Serena Adcock ("Plaintiff") filed this action against her former employer pursuant to Title VII, as amended by the Pregnancy Discrimination Act. Sunquest Properties, Inc. ("Defendant"), the former employer, answered the complaint, participated in discovery, and filed a motion for summary judgment. Judge Hicks granted the motion for summary judgment and dismissed all of Plaintiff's claims. Defendant then filed a Motion for Attorney Fees (Doc. 33), which Judge Hicks referred to the undersigned for a report and recommendation. It is recommended, for the reasons that follow, that the motion be granted, and that Plaintiff be ordered to pay Defendant $17,212.20 in attorney fees, costs, and expenses.

**Prevailing Defendants and Fees**

The general rule in the United States is that litigants must pay their own attorney's fees, win or lose. Congress, in Title VII, created an exception to that rule. The Act provides: "In any action or proceeding under this title the court, in its discretion, may allow the

prevailing party .... a reasonable attorney's fee (including expert fees) as part of the costs ...." 42 U.S.C. § 2000e-5(k).

The standard for determining whether a fee award should be made differs depending on whether the prevailing party is a plaintiff or defendant. A *plaintiff* may be considered a prevailing party for attorney's fees purposes if he succeeds on any significant issue in the litigation that achieves some of the benefit sought in bringing suit. Hensley v. Eckerhart, 103 S.Ct. 1933, 1939 (1983). Attorney fees for a prevailing *defendant*, on the other hand, are presumptively unavailable unless a showing is made that the plaintiff's suit was vexatious, frivolous, or brought to harass or embarrass the defendant. Dean v. Riser, 240 F.3d 505, 508 (5th Cir. 2001); Hensley, 103 S.Ct. at 1937 n. 2.

In Christiansburg Garment Co. v. EEOC, 98 S.Ct. 694 (1978), the Supreme Court cautioned that assessing fees against plaintiffs simply because they do not ultimately prevail would undermine vigorous enforcement of federal law. "Hence, a plaintiff should not be assessed his opponent's attorney's fees unless the court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg, 98 S.Ct. at 701. "Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by Christiansburg." Hughes v. Rowe, 101 S.Ct. 173, 179 (1980).

The different standards attempt to (a) prevent any chilling effect on the enforcement of civil rights by private litigants and (b) recognize that an award of fees to a prevailing

plaintiff is an award against a violator of federal law and in favor of a person chosen by Congress to vindicate important federal policies. Myers v. City of West Monroe, 211 F.3d 289, 292 n.1 (5th Cir. 2000), citing Christiansburg and Hughes. The rather strict standard that applies to prevailing defendants is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from attempting to enforce their rights by the threat of having to pay thousands of dollars in legal fees should their claims fail. Id.

**Whether to Grant a Fee Award**

The court's summary judgment ruling sets forth in detail the court's findings of undisputed issues of fact as presented by the summary judgment record. See Adcock v. Sunquest Properties, Inc., 2009 WL 2878018 (W.D. La. 2009). A summary of those facts will be set forth below.

Defendant owns and operates several apartment complexes in Shreveport. Defendant hired Plaintiff in 2005 to serve as the manager for one of its properties. A management position became available about two years later at a larger complex owned by Defendant. Kathryn Burkett, Plaintiff's supervisor, recommended Plaintiff for the position. Plaintiff, before accepting the job, told Burkett that she was pregnant.

Plaintiff testified that Burkett became concerned about the presence of mold in one of the apartments at the larger complex and asked whether Plaintiff could be exposed to the

mold. Burkett nonetheless promoted Plaintiff to property manager at the larger complex, and Plaintiff received a $6,000 salary increase.

Plaintiff testified that some time after she began working at the larger complex, Ms. Burkett asked her if she realized there were more stairs at the new complex than at her former workplace. Plaintiff answered that she was aware, and Burkett allegedly asked if Plaintiff would be able to handle them. Plaintiff said that she would.

Another property manager, Tamika Anderson, was pregnant and missed work around June 2007. Plaintiff alleges that Ms. Burkett complained about not knowing how long Tamika would be away from work on maternity leave. The summary judgment record showed that Ms. Anderson resumed her job with Defendant upon her return from maternity leave and did not suffer any adverse consequences because of her pregnancy.

Soon after being placed in charge of the larger complex, Plaintiff fired the assistant manager at the property and replaced her with Mandy Lindsey, a personal acquaintance of Plaintiff who had no experience as an apartment manager and was a stay-at-home mom at the time she was hired. Defendant soon began receiving complaints from the tenants about Plaintiff. They said that the office door would be locked during office hours, but they could see Plaintiff and her friend Lindsey sitting inside and not coming to the door. Telephone calls to the office were forwarded to the answering service during office hours. An apartment manager at a nearby complex also received complaints from Plaintiff's tenants that they could not reach Plaintiff. Ms. Burkett twice told the other manager to go to the complex

and check out the situation. Each time, the manager found the front door locked and had to enter through a back maintenance door. She found Plaintiff and her friend sitting in the back office, and she never received an explanation as to why the front door was locked.

The maintenance personnel complained that Plaintiff would not provide them written work orders and that she was not updating the vacancy board. One maintenance worker complained that Plaintiff wrongfully accused him of taking the apartment credit card and screamed at him in the main office using vulgar and abusive language. Plaintiff also instructed the maintenance workers to remove furniture and personal property from an apartment before the tenants were legally evicted.

Ms. Burkett learned of these complaints and met with the company comptroller. They together made the decision to fire Plaintiff. Ms. Burkett told Plaintiff and Mandy Lindsey that they were no longer needed and were discharged from employment effective immediately. Plaintiff later received a separation notice that said she was fired "due to unsatisfactory job performance." Plaintiff soon filed her administrative claim of gender and pregnancy discrimination.

Plaintiff's claims were defeated by a motion for summary judgment, but "[g]ranting summary judgment does not compel the award of [statutory] fees [to a prevailing Title VII defendant]." EEOC v. Agro Distribution, LLC, 555 F.3d 462, 472 (5th Cir. 2009). The grant of summary judgment may, however, be a factor. Other factors that the court may review

include whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the case went to trial. Myers, 211 F.3d at 292.

Judge Hicks held that Plaintiff did not establish a prima facie case of pregnancy discrimination. He noted that Mandy Lindsey, who was not pregnant, was fired at the same time and for the same substandard job performance as Plaintiff. There was also evidence that at least two other employees were pregnant when or soon after Plaintiff was employed at the company, and neither of them suffered any adverse employment actions. Accordingly, there was no evidence that Plaintiff was treated differently than any other employee who failed to perform her job duties.

Judge Hicks also found that, even if a prima facie case were assumed, Defendant had produced a legitimate, non-discriminatory reason for firing Plaintiff, and there was no evidence of pretext. Defendant's legitimate reasons were the many episodes of substandard job performance outlined above, including not responding to tenants during office hours and not properly working with maintenance workers. Plaintiff pointed to Ms. Burkett's comments about the mold, stairs, and Tamika Anderson's maternity leave, but the court did not find those comments sufficient to defeat summary judgment. Notably, Ms. Burkett's concern about Plaintiff's exposure to mold was expressed before Ms. Burkett gave Plaintiff a promotion and a $6,000 raise.

Plaintiff's memorandum in opposition to the motion for fees is devoted largely to arguments that the summary judgment ruling was incorrect. Plaintiff urges that the

comments about mold, stairs, and Tamika Anderson are sufficient to require a trial. That issue has been foreclosed by the court's earlier ruling and judgment, which Plaintiff did not timely appeal.

The undersigned and other judges in this division have historically been reluctant to award fees to prevailing defendants in civil rights and employment discrimination cases, for the reasons set forth in the Supreme Court precedents in this area. The feared chilling effect against enforcement of federal laws is particularly relevant here because most civil rights and employment discrimination cases in this division are filed by plaintiffs of modest means. A judgment against the typical losing plaintiff for fees of even a few thousand dollars would likely be financially devastating and perhaps compel bankruptcy. And it is the plaintiff, not his or her attorney, who is cast in judgment for Title VII fees. These concerns have their limits, however, because the statute was intended to sometimes award defendants fees. The Supreme Court has stated that Congress, when it enacted the fee statute, wanted to make it easier for a plaintiff of limited means to bring a meritorious suit, but it also "wanted to protect defendants from burdensome litigation having no legal or factual basis." Christiansburg Garment, 98 S.Ct. at 700.

The court takes into consideration that counsel for Plaintiff has had a successful employment discrimination practice in this area for more than 20 years. He has won some cases and lost some cases, as all attorneys do. But his overall record reflects that he is selective in the cases that he files. That is to be expected, as most such cases are taken on

a contingency fee basis and are an investment of the attorney's time and money. An attorney, at least one who has been in the business successfully for over two decades, will not accept and file such a case unless he believes it has potential merit and may prove to be a good investment of his resources. Of course, an attorney who accepts a case is often dependent on his client for information at the early stages, so what sounded to the attorney like a good case early on may prove through investigation and discovery to not be so meritorious. Even the most cautious attorney will sometimes encounter such a case.

The undersigned has weighed the competing factors and, despite the presumption against awarding a defendant fees, finds that this is one of those rare exceptions where Plaintiff's case was so groundless as to warrant the exercise of this court's discretion to award attorney's fees. The evidence showed that Plaintiff had terrible job performance that warranted her termination (while she happened to be pregnant). The best evidence Plaintiff could muster to support her allegation that her termination was based on pregnancy rather than poor job performance was the two or three comments. Plaintiff focused on the comment about mold, but Plaintiff got a promotion and raise after that conversation. The question about Plaintiff's ability to negotiate more stairs perhaps acknowledged her pregnancy but was not on its face indicative of any discriminatory intent. The pregnant co-worker returned from her referenced maternity leave and kept working at the company without incident.

Given the paucity of evidence that Plaintiff had to support her allegations, from the very beginning of this case to the end, she should never have filed this suit and subjected

Defendant to the cost of defending it. If fees are not awarded in this case, then it is difficult to imagine the Title VII case in which fees would be awarded to the prevailing defendant. It is recommended that the best exercise of the court's discretion in these circumstances is to award Defendant reasonable fees and costs as the prevailing party in this litigation.

**Amount of Fees and Costs**

    **A.    Introduction**

Once prevailing party status has been decided, the first step in calculating the fee award is to determine a lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998). The party seeking the award should submit evidence supporting the hours worked and rates claimed. The court may reduce the lodestar award if the documentation of hours is inadequate or the billing attorney has not sufficiently excluded from the fee request hours that are excessive, redundant, or otherwise unnecessary. Hensley, 103 S.Ct. at 1939-40.

    **B.    Hourly Rate**

Reasonable fees are to be calculated according to the prevailing market rates in the relevant community. Blum v. Stenson, 104 S.Ct. 1541 (1984). The appropriate hourly rate is not that which "lions at the bar may command" but a rate that is adequate to attract competent counsel. Leroy v. City of Houston, 906 F.2d 1068, 1079 (5th Cir. 1990).

An attorney for a prevailing party ordinarily provides an affidavit that describes the attorney's education and work history, experience in the subject matter at hand, and the hourly rate that the attorney ordinarily charge in such cases. The movant will also ordinarily provide affidavits from other attorneys familiar with the prevailing market rates in the relevant legal community. All we have from counsel for Defendant is a printout of counsel's itemized bill and perfunctory affidavits from two attorneys. Attorney Jennifer H. Johnson testifies that the attached bill "reflects the work performed by Jennifer H. Johnson and expenses incurred" in this case. That is the entire substance of the affidavit. Attorney Brady D. King, II submits the same affidavit, including the sworn testimony that the attached bill reflects the work "performed by Jennifer H. Johnson" in this case. Presumably, King meant to testify that the bill reflected his own work, as he is lead counsel in the case.

The bills reflect that King charged $165 per hour and Johnson charged a lesser rate of $110 per hour. Although the relative experience and expertise of the applicant attorneys is not divulged by the motion, those rates are quite reasonable on their face and considerably less than the $215 hourly rate that the court recently approved for a plaintiff's counsel in a civil rights case. See Powell v. Hill, 2008 WL 4933983 (W.D. La. 2008). Plaintiff has not specifically challenged the hourly rates claimed. Accordingly, the hourly rate suggested by the bills should be accepted.

### C. Total Hours

Defendant's attorneys represent in their motion that their total fees and expenses are $28,687. It is not readily apparent from the affidavits or the bills how much of that figure is attributable to attorney time, as opposed to reimbursement of expenses (e.g., photocopies, court reporters, and postage) charged on the bills, or paralegal time. The court notes that the bills include at least one charge for time by Naomi Hamilton at a rate of $65 per hour. There is no affidavit from Ms. Hamilton, who is presumably a paralegal, or other evidence of record regarding the prevailing rate for paralegal services in the relevant market.

It is not the court's role to take pen and calculator in hand and parse the bills to find a total amount of attorney time so that its reasonableness may be judged. Plaintiff-applicants who make such lacking submissions see their fees discounted, and Defendant should receive equal treatment. The court does note that the attorney time entries, though their total is not submitted, appear to be generally reasonable, and Plaintiff has not challenged any particular entries.

A similar issue that affects the number of compensable hours is whether counsel bears his burden of demonstrating and documenting the exercise of billing judgment. <u>Saizan v. Delta Concrete Products Co.</u>, 448 F.3d 795, 799 (5th Cir. 2006). Billing judgment requires documentation of hours that are written off as unproductive, excessive, or redundant, just as counsel would do for a client who pays his fee at an hourly rate. Ideally, the fee application will show not only the hours that are claimed but also those that were written off based on

the sound exercise of billing judgment. Id.; Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990). The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. Walker v. U.S. Department of Housing and Urban Development, 99 F.3d 761, 770 (5th Cir. 1996).

Counsel has not testified to the exercise of billing judgment, and there is no readily apparent indication from the bills that recorded time was not charged. The Fifth Circuit deems such matters important, and Plaintiff has raised an objection based on the lack of evidence of billing judgment.

The time entries are of adequate detail, and the court does not doubt that defense counsel worked diligently to defend their client in this litigation. But the fee application is lacking in some very important respects as discussed above, as well as the absence of evidence of billing judgment. Under these circumstances, and considering the relevant Fifth Circuit precedents, the undersigned finds that the best exercise of the court's discretion as to how to address these deficiencies is to discount the total amount requested by 40 percent. This is a significant reduction, and reasonable arguments could be made for a lesser deduction, but 40 percent is the most reasonable number given the significant deficiencies in the fee application and all other relevant considerations in this case. This reduction yields a total figure of $17,212.20 for attorney fees, costs, and expenses.

Accordingly;

**IT IS RECOMMENDED** that the **Motion for Attorney Fees (Doc. 33)** be **granted** and Serena Adcock be ordered to pay Sunquest Properties, Inc. $17,212.20 in attorney fees, costs, and expenses.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within fourteen (14) days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of January, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE